# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| VALLEY FOOD SERVICES, LLC, ) | Case No. 06-50038 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| MAUREEN SCULLY, Chapter 7 Trustee for ) | |
| the Valley Food Services, LLC Bankruptcy ) | |
| Estate, ) | |
| ) | |
| v. ) | |
| ) | |
| HAROLD M. DANZIG, ) | |
| ) | Adversary No. 08-4013 |
| Defendant and Third-Party ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MISSION BANK, ) | |
| ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM OPINION

The Court takes up for consideration and ruling Mission Bank's motion to dismiss Harold M. Danzig's third-party complaint. The Bank's motion raises a jurisdictional question of first impression to this Court, which is: Do bankruptcy courts have supplemental jurisdiction under 28 U.S.C. § 1367?

Danzig contends that they do and that this Court should exercise that jurisdiction over his claim against the Bank (notwithstanding the fact that the resolution of that claim will have absolutely no effect on the administration of the bankruptcy estate) because his claim against the Bank shares a close factual nexus with the Trustee's claims against Danzig. The Bank, on the other hand, argues that § 1367 does not apply to bankruptcy courts and that their jurisdiction is limited by 28 U.S.C. § 157(a) to matters that arise under Title 11 or that will conceivably affect the administration of (*i.e.*, are "related to") a bankruptcy case. Alternatively, the Bank argues that

Danzig's claim lacks the close factual nexus with the Trustee's claim required for the exercise of supplemental jurisdiction.

Upon consideration of the pleadings and applicable law, the Court will dismiss Danzig's third-party complaint against the Bank. As discussed in detail below, the Court does not believe that 28 U.S.C. § 1367 confers supplemental jurisdiction on bankruptcy courts or that the exercise of that jurisdiction is warranted here, even if they have such jurisdiction. As an alternative basis for dismissal, the Court will exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1).

## BACKGROUND

The facts considered are limited to those set forth in Danzig's third-party complaint. For purposes of ruling on a motion to dismiss based on a lack of subject matter jurisdiction,[1] the Court presumes that the facts alleged by Danzig are true and construes them in the light most favorable to him.[2] In light of their brevity and the fact that they have not been controverted by the Bank, the Court adopts Danzig's factual allegations in toto, edited only slightly for publication.

1. On September 18, 2000, Mission Bank entered into a lending relationship with the Debtor, Valley Food Services, LLC ("Valley"). That relationship was documented with a promissory note and security agreement providing to Mission Bank a security interest on Valley's real and personal property assets including, but not limited to, its inventory and accounts receivable. In connection with this lending relationship, Danzig executed a guaranty of the financial obligations owed by Valley to Mission Bank.

2. Mission Bank subsequently took steps to perfect its security interest by filing a UCC-1 financing statement with the Missouri Secretary of State in early October 2000. While such filing was not recorded it was otherwise effective under Missouri law because it was accepted by the filing office and was not otherwise refused.

---

[1] Although the Bank did not provide the specific federal rule pursuant to which it filed its motion, the Court presumes that it is moving under Fed. R. Civ. P. 12(b)(1), applicable to bankruptcy proceedings pursuant to Fed. R. Bank. P. 7012(b).

[2] *Young America Corp. v. Affiliated Computer Services (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 61, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992)).

3. Valley later entered into additional loans with Mission Bank, all of which were guaranteed by Danzig.

4. Danzig had a general expectation that Mission Bank would at all times act in a commercially reasonable manner in its banking practices with respect to Valley.

5. Despite having timely perfected its security interest in Valley's personalty contemporaneous with the initiation of the lending relationship in September 2000, Mission Bank allowed its perfection to lapse due to its failure to timely file a continuation statement as required by Missouri law. As a consequence, some time in late October 2005, Mission Bank became unperfected with respect to its security interest in Valley's personalty.

6. Subsequently, based on information known only to Mission Bank, Mission Bank learned that it was unperfected and, without the knowledge or input of Valley or any of its principals, including Danzig, it filed a financing statement with the Missouri Secretary of State on November 11, 2005, thereby re-perfecting its security interest in the personal property collateral.

7. More than ninety days after such "re-perfection," Valley filed for relief under Chapter 11 of the United States Bankruptcy Code. Because Valley's bankruptcy case was filed more than ninety days from the date Mission Bank re-perfected its interest in Valley's personalty, Mission Bank was beyond the limitations period for the bringing of a preference avoidance action pursuant to 11 U.S.C. § 547. Conversely, given that Danzig was an insider as defined by the Bankruptcy Code, Mission Bank's unilateral actions subjected him to an expanded one- year reach-back from February 14, 2006, the date Valley filed its bankruptcy petition. Thus, as a result of Mission Bank's failure to file a continuation statement for its otherwise proper UCC-1 filing in October 2000, Danzig has been sued by the Trustee for an alleged preference.

## DISCUSSION

**1. The Bankruptcy Court does not have supplemental jurisdiction.**

Danzig concedes that the resolution of his claim against the Bank will not have any effect on the administration of the Debtor's bankruptcy estate and therefore falls outside of the Court's jurisdictional grant under 28 U.S.C. §§ 157(a) and 1334. Danzig asserts instead that the Court has

subject matter jurisdiction over his claim under 28 U.S.C. § 1367. Section 1367 provides in pertinent part:

> [F]ederal district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."[3]

Putting aside for a moment that, as discussed below, Danzig's claim is not sufficiently related – factually or logically – to the Trustee's claim against him so as to warrant the exercise of supplemental jurisdiction, the Court first analyzes whether § 1367's grant of supplemental jurisdiction extends to bankruptcy courts.

There is a split of authority on this issue,[4] but the cases holding that bankruptcy courts do not have supplemental jurisdiction are, in this Court's opinion, better reasoned. Moreover, that conclusion is mandated by precedent in this jurisdiction.

The split of authority is, essentially, a divergence of opinion on the interpretation of the phrase "related to" in 28 U.S.C. § 157(a). Section 157(a) is the source of bankruptcy court jurisdiction.[5] More fully, it provides each district court with the authority to refer "any or all cases under title 11... and any or all proceedings arising under title 11 or arising in *or related to a case under title 11*" to the bankruptcy court.[6] Generally, a proceeding is considered to be "related to" a bankruptcy case if the outcome of that proceeding could "conceivably have any effect on the estate being administered in bankruptcy."[7] However, the courts which have held that bankruptcy courts possess supplemental jurisdiction interpret "related to" more broadly to encompass proceedings that share a factual or logical "nexus" with a core bankruptcy proceeding, even if the outcome will not

---

[3] 28 U.S.C. § 1367.

[4] *Compare In re Walker*, 51 F.3d 562 (5th Cir. 1995) (no supplemental jurisdiction); *Halvajian v. Bank of New York, N.A.,* 191 B.R. 56, 59 (D. N.J. 1995) (same); and *In re Houghton*, 164 B.R. 146, 148 (Bankr. W.D. Wash. 1994) (same), *with In re Sasson*, 424 F.3d 864 (9th Cir. 2005); *In re Hospitality Venturs/LaVista*, 358 B.R. 462 (Bankr. N.D. Ga. 2007); and *In re South Bay Medical Associates*, 184 B.R. 963 (Bankr. C.D. Cal. 1995).

[5] *Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993).

[6] 28 U.S.C. § 157(a) (emphasis added).

[7] *Abramowitz v. Palmer*, 999 F.2d at 1277 (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

4

affect the bankruptcy estate.[8]

For example, the Ninth Circuit Court of Appeals stated:

> A bankruptcy court's "related to" jurisdiction is very broad, "including nearly every matter directly or indirectly related to the bankruptcy." *Mann v. Alexander Dawson* (*In re Mann*), 907 F.2d 923, 926 n. 4 (9th Cir. 1990). The bankruptcy court's "related to" jurisdiction granted by the Bankruptcy Code derives directly from the Bankruptcy Clause, which grants Congress the power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., art. 1, § 8. Congress expanded the Bankruptcy Court's Article I jurisdiction by granting federal district courts with "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Thus, at present, the bankruptcy court's "related to" jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 "over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See Montana v. Goldin* (*In re Pegasus Gold Corp.*), 394 F.3d 1189, 1195 (9th Cir. 2005); *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 n. 5 (9th Cir.1997).[9]

The Court declines to adopt this expansive interpretation of "related to" jurisdiction for two reasons. First, as suggested by the citation in footnote seven, the Eighth Circuit Court of Appeals has adopted the "conceivable effect" test to define the boundaries of a bankruptcy court's jurisdiction.[10] Adopting a more expansive parameter for "related to" jurisdiction would effectively

---

[8] Another rationale given is that bankruptcy courts necessarily have supplemental jurisdiction because they are "units" of the district court under 28 U.S.C. § 151. *See, e.g., In re W.J. Services, Inc.*, 139 B.R. 824 (Bankr. S.D. Tex. 1992). But this reasoning yields the unsupportable conclusion that bankruptcy court jurisdiction is equal to that provided to the district court. "If so, then a bankruptcy court could hear admiralty cases, postal rate cases, patent cases (and the like) although they are unrelated to any bankruptcy case." *In re Foundation for New Era Philanthropy,* 201 B.R. 382, 397-98 (Bankr. E.D. Pa. 1996).

[9] *In re Sasson*, 424 F.3d 864, 868-869 (9th Cir. 2005). *See also In re Hospitality Ventures/LaVista*, 358 B.R. 462 (Bankr. N.D. Ga. 2007) ("[A] claim may be 'related to' a bankruptcy case if a sufficient nexus between them exists, even if the 'conceivable effect' test is not met.").

[10] *Abramowitz v. Palmer*, 999 F.2d at 1277. *See also In re Reeves,* 65 F.3d 670, 675 (8th Cir. 1995) ("An action is related to the bankruptcy case if 'it affects the amount of property available for distribution or the allocation of property among creditors.') (citing *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987)).

Case 08-04013-jwv   Doc 38   Filed 12/09/08   Entered 12/09/08 15:27:51   Desc Main
         Document      Page 6 of 9

eviscerate, and thus be in direct conflict with, that precedent.[11]  Second, even in the absence of mandatory precedent, the Court would not be inclined to adopt an expansive interpretation of "related to" jurisdiction in light of the Supreme Court's admonishments that jurisdictional statutes are to be read narrowly.[12]

For these reasons, the Court concludes that it does not have supplemental jurisdiction, and therefore it does not have jurisdiction over Danzig's claim against the Bank.

**2.     Exercise of supplemental jurisdiction is not warranted in this case.**

Even if the Court has the authority to exercise supplemental jurisdiction over a proceeding, the decision whether to exercise that jurisdiction is within the sound discretion of the Court.[13]  In light of the latitude afforded, the Court will refrain from exercising supplemental jurisdiction over Danzig's third-party complaint against the Bank.  Upon close inspection, the factual nexus between Danzig's claim against the Bank and the Trustee's complaint against him is much less significant than it appears at first glance.  It is true that the facts underlying the existence and amount of the damages Danzig may ultimately seek from the Bank are intertwined with the facts germane to the Trustee's complaint, but the facts germane to a determination of the Bank's liability for those damages – *i.e.*, the existence of a duty owed to Danzig and the Bank's breach of that duty – have absolutely no connection to the Trustee's complaint.  Presumably, the duty arose when Danzig guaranteed the Debtor's obligations to the Bank in 2000, and that duty was (allegedly) breached when the Bank failed to maintain its secured position in the Debtor on or before October 2005,

---

[11] *See In re Walker*, 51 F.3d 562, 571-72 (5th Cir. 1995) ("Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive 'relate to' and 'arising in' jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous.  Thus, it would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants.") (citations and quotations omitted).

[12] *See Finley v. United States,* 490 U.S. 545, 549, 109 S.Ct. 2003, 2006,104 L.Ed.2d 593 (1989).  The Judicial Improvements Act of 1990, 104 Stat. 5089, which codified supplemental jurisdiction under 28 U.S.C. § 1367, limited *Finley*'s restrictions on the district courts' exercise of that jurisdiction, but the proposition that a federal court's jurisdiction must be supplied by statute and that jurisdiction should be narrowly interpreted retains its vitality.  *See In re Walker*, 51 F.3d 562, 571-72 (5th Cir. 1995).

[13] *In re Chambers*, 125 B.R. 788, 794 (Bankr. W.D. Mo. 1991) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725-26, 86 S.Ct. 1130, 1138-39, 16 L.Ed.2d 218 (1966)).

according to Danzig's facts. So all of the facts crucial to Danzig's complaint occurred before November 2005, when the allegedly preferential transfer at issue in the Trustee's complaint took place.

For these reasons, the Court exercises its discretion to not assert supplemental jurisdiction over Danzig's third-party complaint against the Bank.

### 3. Permissive abstention is warranted in this case.

If it should be determined that the Court has jurisdiction over Danzig's claim, the Court will abstain under 28 U.S.C. § 1334(c)(1) from exercising that jurisdiction. Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to a case under title 11.

Section 1334(c)(1) speaks only in general terms – "the interest of justice" and "the interest of comity"– and does not clearly delineate any specific criteria for a court to reach a decision to abstain; therefore, the courts have developed several factors to determine whether to abstain, including:

(1) the effect or lack thereof on the efficient administration of the estate if a Court abstains;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the degree of relatedness to the main bankruptcy proceeding;

(6) the burden on the bankruptcy court's docket;

(7) the likelihood that one of the parties is forum shopping;

(8) the presence or necessity in the proceeding of non-debtor parties;

(9) the existence of a jurisdictional basis other than 28 U.S.C. § 1334;

(10) the existence of a right to a jury trial and whether the parties consent to jury trial in the bankruptcy court;

(11) the financial condition of the parties; and

(12)    the case's status as a "related" matter rather than a core proceeding.[14]

These factors are applied flexibly. Their relevance and importance varies with the particular circumstances of each case, and no one factor is necessarily determinative.

In this case, nine out of twelve of these factors weigh in favor of abstention, and, of the three factors that do not weigh in favor of abstention, only one factor – number four – actually weighs against abstention. The other two factors – seven and eleven – are inapplicable or inconclusive.

Elaborating briefly on each of the factors weighing in favor of abstention – One: the resolution of Danzig's claim against the Bank will have absolutely no effect on the administration of the estate. Two: state law issues more than predominate over bankruptcy issues, they are the only issues implicated by Danzig's complaint. Three: Danzig's claim against the Bank will likely raise novel and "difficult" issues of state law, *e.g.*, whether a lender owes a duty to a guarantor to maintain the lender's collateral position in the borrower's (debtor's) assets, whether the lender's failure to file a UCC continuation statement constitutes a breach of that duty, and whether the guarantor has a right of indemnification for the liability incurred by the guarantor in a preferential transfer avoidance action. These issues apparently involve Kansas state law, because Danzig and the Bank are Kansas residents. As such, they should be decided by a Kansas sate court, not a Missouri Bankruptcy Court. Five: Danzig's complaint is only tangentially related to the main bankruptcy proceeding. Six: a trial on Danzig's claim against the bank would likely be time consuming and burdensome on the bankruptcy court docket, especially since the resolution of that claim will have no effect on the administration of the estate. Eight: non-debtor parties are the only parties involved in the proceeding. Nine: there is no jurisdictional basis other than § 1334 (assuming that § 1367 doesn't apply to bankruptcy courts). Ten: Danzig's claim against the bank is apparently rooted in law (versus equity), so the Bank and Danzig are both likely entitled to a jury trial.[15] And, twelve: the "case" initiated by Danzig's third-party complaint against the Bank is not a core proceeding nor is it related to the bankruptcy case.

---

[14] *See In re Williams*, 256 B.R. 885, 893-94 (B.A.P. 8th Cir. 2001) (citing *In re Phelps Technologies, Inc.*, 238 B.R. at 821 (Bankr. W.D. Mo. 1999)).

[15] The Bank hasn't demanded a jury trial, but Danzig has. Ironically, Danzig's contention that his right to a jury trial supports his argument that the Court has supplemental jurisdiction over his claim against the Bank actually weighs in favor of abstention.

The sole factor weighing against abstention, factor four– the absence of a related proceeding pending in state or other non-bankruptcy court – barely moves the scale overwhelmingly tipped in favor of abstention.

For these reasons, the Court will abstain under § 1334(c)(1) from exercising jurisdiction over Danzig's third-party complaint against the Bank.

## CONCLUSION

For the reasons stated above, the Court will grant Third-Party Defendant Mission Bank's motion to dismiss the third-party complaint filed against it against the Defendant, Harold M. Danzig. A separate order dismissing the third-party complaint and dismissing Mission Bank as a party to this law suit will be entered will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 9th day of December 2008.

        /s/   Jerry W. Venters
United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
Mick Lerner
Benjamin F. Mann